PAUL J. FISHMAN
United States Attorney

NICOLE M. ELLIOTT(NME5768)
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 227
Washington, D.C.  20044
Telephone: (202) 616-9785
Nicole.M.Elliott@usdoj.gov

|  |  |
|---|---|
| UNITED STATES OF AMERICA | **UNITED STATES DISTRICT COURT** |
|  | **DISTRICT OF NEW JERSEY** |
| Plaintiff, | **(NEWARK DIVISION)** |
|  |  |
| v. | Hearing date: March 1, 2010 |
|  |  |
| GERALD M. SHERMAN | No. 02-cv-1706-SRC |
| JUDITH ANN SHERMAN |  |
| PRINCIPLE RESIDENTIAL MORTGAGE |  |
| COLONIAL STATE BANK |  |
| EDGAR SHERMAN |  |
| MORRIS GOLDSTEIN |  |
|  |  |
| Defendants. |  |

**MEMORANDUM IN SUPPORT OF THE
UNITED STATES' MOTION TO REOPEN**

The United States brought this action against Gerald and Judith Sherman to reduce assessments to judgment and foreclose federal tax liens against their real property located at 26 Ridge Road, West Long Branch, New Jersey (the "Real Property").  The matter was administratively terminated on November 11, 2003,

because Gerald and Judith Sherman filed for bankruptcy. The United States respectfully moves to reopen this matter as the issues are ripe for adjudication.

## PROCEDURAL HISTORY

The United States instituted this action in 2002 to reduce assessments made by the Internal Revenue Service against Gerald M. Sherman and Judith Ann Sherman, husband and wife, to judgment. The United States also sought to foreclose the related federal tax liens on the primary residence of the Shermans, the Real Property at issue. As required by statute, the complaint named all parties the United States believed might claim an interest in the Real Property.

Shortly after the Clerk of the Court entered a default against the Shermans on July 11, 2003, they filed for bankruptcy. *See generally In re: Gerald M. Sherman and Judith A. Sherman*, No.03-bk-36730-MS (USBC N.J. filed Aug. 13, 2003). On November 17, 2003, as a result of the Shermans' Chapter 7 bankruptcy, the Court administratively terminated the instant matter. The bankruptcy court later granted the Shermans a discharge under section 727 of the Bankruptcy Code and concluded the bankruptcy case.

The United States filed a motion to reopen the instant matter in 2007. Counsel for the United States at the time neglected to explain to the Court why reopening the case was necessary and contended that because of the nature of the motion, a formal brief was not required. On July 31, 2007, the Court denied the United States' motion,

suggesting that it would be appropriate for the United States to explain why the matter was now ripe for adjudication.

As will be discussed below, after the United States' 2007 motion was denied, Mrs. Sherman sought innocent spouse relief with the Internal Revenue Service pursuant to 26 U.S.C. § 6015. Under section 6015, a spouse may be granted relief of their tax liabilities. Counsel for Mrs. Sherman and the United States agreed that the United States would not take further action to reinstate this matter until the Service reached a decision. On November 23, 2009, the Service determined that Mrs. Sherman should be allowed innocent spouse relief.

## ARGUMENT

This matter is now ripe for adjudication because Mr. Sherman remains liable for the outstanding liabilities and the related federal tax liens continue to encumber the Real Property.

//
//
//
//
//
//
//

I.      **Mr. Sherman remains liable to the United States**

As identified in the United States' complaint the instant matter concerned the Shermans' income tax liabilities as follows:

| Tax Year | Current Balance (As of 12/8/09) |
|---|---|
| 1986 | $554,713 |
| 1991 | $149,423 |
| 1996 | $61,431 |
| 1997 | $201,057 |
| 1998 | $109,852 |
| 1999 | $505,420 |
| 2000 | $23,285 |

**$1,605,181**

A.  The Internal Revenue Service has determined that Mrs. Sherman is entitled to innocent spouse relief, and therefore she has no income tax liability for the tax years at issue.

Although the United States' complaint alleged that Mr. and Mrs. Sherman were jointly and severally liable for the above identified tax liabilities, Mrs. Sherman has received innocent spouse relief and therefore has no income tax liability for the years 1986, 1991, 1996-2000.

Under the Internal Revenue Code, the parties to a joint tax return share joint and several liability for the taxes due, regardless of who earns the income. *Estate of Quirk v. Commissioner of Internal Revenue*, 928 F.2d 751, 762 (6th Cir.1991). However, in order to avoid injustice that such a rule might promote in certain situations, Congress created

the innocent spouse doctrine. The innocent spouse provision of the Internal Revenue Code provides relief from joint and several liability for tax deficiencies where an "innocent spouse" can show that it would be inequitable to hold her liable because she did not know, and had no reason to know, of the understatement. 26 U.S.C. § 6015.

In early 2008, Mrs. Sherman applied for innocent spouse relief with the Internal Revenue Service. Counsel for the United States and Mrs. Sherman agreed that until the innocent spouse issue was resolved, the United States would not take any action to reinstate this action. On November 23, 2009, the Internal Revenue Service Appeals Office reached the conclusion that Mrs. Sherman should be allowed innocent spouse relief. Accordingly, Mrs. Sherman is no longer liable as initially complained of by the United States. Rather, Mr. Sherman is solely liable for the above-identified liabilities.

> B. Notwithstanding the general section 727 discharge, the majority of Mr. Sherman's tax liabilities were not discharged as a result of the bankruptcy pursuant to 11 U.S.C. § 523.[1]

Section 727 generally discharges a debtor from his debts that arose before he filed a petition for bankruptcy. *See* 11 U.S.C. § 727. Section 727 reflects the Bankruptcy

---

[1] Should the Court grant this motion to reopen, Mr. Sherman's current tax liability will be further addressed in a motion for default judgment against Mr. Sherman. (Alternatively, should Mr. Sherman decide to participate in this action, the United States will file a motion for summary judgment further addressing Mr. Sherman's liability.) Official transcripts from the Internal Revenue Service will also be submitted. The discussion concerning the consequences of his bankruptcy is provided to illustrate the fact that this matter is ripe for adjudication inasmuch as the bankruptcy did not discharge most of the liabilities complained of. Moreover, with respect to the discharged tax liabilities, the underlying federal tax liens continue to attach to the Real Property in rem, notwithstanding the discharge of the in personam liability. *See In re Isom*, 901 F.2d 744, 745-46 (9th Cir. 1990).

Code's rehabilitative nature, providing a debtor with a "fresh start." *E.g. Haas v. Internal Revenue Service*, 48 F.3d 1153, 1156 (11th Cir.1995). However, section 523(a) enumerates eighteen categories of debts that are excepted from a debtor's discharge, i.e., that are not dischargeable. *See* 11 U.S.C. § 523(a). With respect to Mr. Sherman, three categories of his tax debts were not discharged under section 523: (1) the kind specified in section 507(a)(8); (2) for which a tax return was filed after its due date and within two years of filing the bankruptcy petition; and (3) for which debtor made a fraudulent tax return. *Id.* at § 523(a)(1)(A)-(C). Category one, by referencing 507(a)(8), includes taxes for which a return was due three years within the filing of the bankruptcy petition. 11 U.S.C. § 507(a)(8)(A)(i).

The sum of these provisions provide the so called two and three year look back period, as well as a special provision concerning the dischargeability of taxes connected with fraudulent tax returns.

> (i) Category One - The Three Year Look Back Period

As noted, debts for taxes for which a return was due three years within the filing of the bankruptcy petition are not dischargeable. 11 U.S.C. §§ 523(a)(1)(A); 507(a)(8)(A)(i).

For purposes of this determination, there are two relevant dates: (1) the date on which the tax return was due; and (2) the date of the filing of the bankruptcy petition. If the time between these two dates is less than three years, the debt is excepted from discharge by virtue of sections 523(a)(1)(A) and 507(a)(8).

Mr. Sherman's 1999 and 2000 income taxes were not discharged under the three year look back period.[2] Mr. Sherman filed for bankruptcy August 13, 2003. Mr. Sherman received an extension by which to file his 1999 income tax return until October 15, 2000. Because October 15, 2000 falls within three years of the bankruptcy petition, this liability is not discharged. Similarly, Mr. Sherman received and extension by which to file his 2000 income tax return until August 15, 2001. Because August 15, 2001 falls within three years of the bankruptcy petition, this liability is not discharged.

> (ii) Category Two - The Two Year Look Back Period

The liabilities for 1996, 1997, and 1998 were not discharged in the bankruptcy. Under the three year rule identified above, these liabilities would be discharged because the dates on which the tax returns were due fall well outside the three year look back period measured by the filing of the bankruptcy petition. However, Section 523(a)(1)(B)(ii) excepts from discharge any tax for which a return was filed after its due date and within two years of filing the bankruptcy petition. This section protects the United States' interest in instances such as these, where a taxpayer files his tax return after it was due. Mr. Sherman filed his 1996, 1997, 1998 income tax returns on October 1, 2001, late and within two years of his bankruptcy petition. Accordingly, these liabilities were not discharged.

---

[2] Alternatively, the 1999 and 2000 income tax liabilities were not discharged under the two year look back period discussed below.

     (iii) Category Three- Fraud

 Section 523(a)(1)(C) states that taxes with respect to which debtor made a fraudulent return or willfully attempted in any manner to evade or defeat such tax are not dischargeable.  Mr. Sherman's 1986 taxes, although not covered by either the two or three year look back period, are nevertheless not dischargeable.  The Internal Revenue Service conducted an examination of Mr. Sherman and determined that fraud was present.  Accordingly, Mr. Sherman's 1986 tax liability was not discharged.

 Thus, although his 1991 tax liabilities were discharged in the bankruptcy, Mr. Sherman's 1986, 1996, 997, 1998, 1999, and 2000 taxes were not.

   C. The tax penalties of Mr. Sherman were not discharged as a result of the bankruptcy.

 For dischargeability purposes, tax penalties are treated separately from the underlying tax obligation.  *See* 11 U.S.C. §§ 523(a)(7); 507(a)(8)(G).  The relevant provision in this matter is 11 U.S.C. § 523(a)(7).

 Reduced to its simplest form, section 523(a)(7) means that tax penalties are dischargeable if they stem from a transaction that occurred more than three years before the bankruptcy petition was filed.  11 U.S.C. § 523(a)(7).  With respect to penalties for a taxpayer's failure to file tax returns or pay the tax due, the transaction date is the date the return and payment were due.  *E.g., In re Hedgecock*, 160 B.R. 380, 383 (D. Or. 1993); *In re Fortney*, 1995 WL 606099, *4 (Bankr. S.D.Ga. 1995).

According to section 523(a)(7) therefore, the penalties related to the tax years 1986, 1991, 1996, 1997, and 1998 are dischargeable because the transactions occurred outside three years from the filing of the bankruptcy petition. The penalties for 1999 and 2000, however, are not dischargeable. For the tax year 1999, Mr. Sherman's tax return, inclusive of extensions, was due October 15, 2000. He did not file the return until September 9, 2001, and did not pay the full liability as shown due on the return. As a result the Internal Revenue Service assessed a penalty for filing the return late and penalty for late payment. Because the return and full payment of the taxes was due October 15, 2000 the penalties are not dischargeable because October 15, 2000 falls within three years of the bankruptcy petition. Likewise for the tax year 2000, Mr. Sherman's tax return was due on August 15, 2001. He did not timely file or pay the liability and because August 15, 2001 is within three years of the bankruptcy these penalties are not dischargeable under section 523(a)(7).

**II.     The federal tax liens related to both the discharged and non-discharged tax liabilities continue to encumber the Real Property**

"If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount *** shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321; *United States v. National Bank of Commerce*, 472 U.S. 713, 719 (1985). The lien arises when an assessment is recorded and continues until the tax debt is satisfied or becomes unenforceable by reason of lapse of time. 26 U.S.C. § 6322; *National Bank of Commerce*,

472 U.S. at 719; *Glass City Bank v. United States*, 326 U.S. 265, 267 (1945).  The lien is general in nature, *United States v. City of New Britain,* 347 U.S. 81, 84 (1954), and reaches "every interest in property that a taxpayer might have," *National Bank of Commerce*, 472 U.S. at 720.  *Accord, Internal Revenue Service v. Subranni  (In re Atlantic Business & Community Development Corp.)*, 944 F.2d 1067, 1072 (3d Cir. 1993).

While the United States is prohibited from collecting debts discharged in bankruptcy, the bankruptcy discharge "extinguishes only one mode of enforcing a claim-namely, an action against the debtor in personam-while leaving intact another-namely, an action against the debtor in rem."  *Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991).  Valid federal tax liens, therefore, pass through bankruptcy unscathed as to a debtor's prepetition property or rights to property.  *See Dewsnup v. Timm*, 502 U.S. 410, 417 (1992).  *See also Cen-Pen Corp. v. Hanson*, 58 F.3d 89, 93 (4th Cir. 1995); *Wrenn v. American Cast Iron Pipe Co. (In re Wrenn)*, 40 F.3d 1162, 1164 (11th Cir. 1994); *In re Isom*, 901 F.2d 744, 745-46 (9th Cir. 1990).  This rule applies to all prepetition assets, including exempt and abandoned assets.  *In re Avola*, 1997 WL 792534, at *2 (Bankr. N.J. 1997), *citing, Johnson v. Home State Bank*, 501 U.S. 78 (1991).

As identified in the United States' complaint, the Shermans acquired the Real Property on or about December 1, 1971.  Notices of federal tax liens were filed against the Shermans for the tax years 1986 and 1991 on April 14, 1992 and September 9, 1992,

respectively.³ The notices of federal tax liens have been refiled as necessary. Therefore even though the 1991 tax liabilities was discharged - the federal tax liens remain intact.

Although Mrs. Sherman has no tax liability for the years at issue, the United States can nevertheless seek the foreclosure of the federal tax liens. This action was brought pursuant to 26 U.S.C. § 7403. (Compl. ¶¶ 2-3.) Section 7403(a) authorizes the institution of a civil action in federal district court to enforce a lien "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax." Section 7403(b) provides: "All persons having liens upon or claiming any interest in the property involved in such action shall be made parties thereto." The suit is a plenary action in which the court "shall ... adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property." 26 U.S.C. § 7403(c). *See generally United States v. Craft*, 122 S.Ct. 1414 *(2002), United States v. Rodgers*, 461 U.S. 677 (1983).

In the seminal case of *United States v. Rodgers*, 461 U.S. 677 (1983), the United States Supreme Court interpreted Section 7403 as authorizing the forced sale of property even where an innocent third-party has an ownership interest in that property. The Rodgers court read Section 7403 as contemplating "not merely the sale of the delinquent taxpayer's own interest, but the sale of the entire property (as long as the United States has any 'claim or interest' in it), and the recognition of third-party

---

³ Notices of federal tax liens were also filed for the tax years 1996 - 2000 on November 16, 2001.

interests through the mechanism of judicial valuation and distribution." *Rodgers*, 461 U.S. at 693-94. Accordingly, the United States can foreclose the federal tax liens on the Real Property despite the fact that Mrs. Sherman no longer has any tax liability for the years at issue. Upon such sale, the proceeds will be divided between Mr. Sherman and Mrs. Sherman, with the former paid to the United States to be applied against Mr. Sherman's liabilities.

## CONCLUSION

Based on the above, Mr. Sherman has an outstanding income tax liability and the United States has a subsisting federal tax lien against the Real Property. The United States respectfully requests that the Court reopen this matter in order to allow the United States to reduce the assessments made against Mr. Sherman to judgment and to foreclose the federal tax liens.

Dated: January 25, 2010

                                                Respectfully submitted,

                                                PAUL J. FISHMAN
                                                United States Attorney

                                                  /s Nicole M. Elliott
                                                NICOLE M. ELLIOTT(NMS5768)
                                                Trial Attorney, Tax Division
                                                U.S. Department of Justice
                                                P.O. Box 227
                                                Washington, D.C.  20044
                                                Telephone: (202) 616-9785
                                                Nicole.M.Elliott@usdoj.gov